# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| COREY DARNELL MOORE, | |
| Petitioner, | No. C18-2011-LRR |
| vs. | **MEMORANDUM, ORDER AND OPINION** |
| PATTI WACHTENDORF, | |
| Respondent. | |

## *I.     INTRODUCTION*

Before the court is Corey Moore's 28 U.S.C § 2254 petition (docket no. 1), motion to stay (docket no. 10), and motion for an extension of time (docket no. 18). The case is fully submitted, and oral argument is not necessary. *See* Rules Governing § 2254 Cases, Rule 8(a).

## *II.    STATE COURT PROCEEDINGS AND PROCEDURAL HISTORY*

The Iowa Court of Appeals set out the facts underlying petitioner's conviction:

> In 2010, Belinda Robinson became acquainted with Alonzo Henderson through Facebook. Henderson owned a restaurant in Waterloo and invited Robinson to move into his trailer in Cedar Falls and work in his restaurant. Robinson did so, but Henderson became physically abusive and did not pay Robinson for her work in the restaurant.
>
> Due to their acquaintance, Robinson was aware Henderson was a drug dealer and that he was soon to receive a large quantity of marijuana and some quantity of cocaine. At trial, Robinson testified the plan was to rob Henderson of the drugs and "for [Henderson] to get roughed up and if need be then to use duct tape if they had to, but just basically to rough him up." Robinson included in the plan Jacque Dukes, Crystal Cooper, and Lamario Stokes. Moore is a friend of Dukes and joined in the scheme not long

before its commission. Robinson was not aware Moore was intending to participate until the day of the robbery.

On January 26, 2011, the marijuana delivery was made to Henderson's residence. Henderson brought in two men to help with the drugs, William McNealy and Ryan Harper. Shortly after the delivery, Robinson drove Harper's car to buy cigarettes and plastic bags, and later met up with Dukes, Stokes, Cooper, and Moore at a nearby motel. While there, they decided to lure McNealy and Harper away from the trailer by telling them Robinson had run out of gas in the Hy-Vee parking lot. The group left Harper's car in the Hy-Vee parking lot and drove back to the trailer in Dukes's car. Robinson made the call, then the group watched as Harper and McNealy left the trailer.

Once Harper and McNealy were gone, Moore, Dukes, and Stokes went into Henderson's trailer. Robinson and Cooper waited in the car. All three men were dressed in black and wore covers over their faces. Henderson testified he was in the kitchen when three people dressed in black kicked in the door to his trailer, though he could not discern their race or gender. Two of the intruders were holding guns and pointing them at Henderson. Henderson further testified the marijuana was clearly visible on the kitchen counter.

Henderson then walked into his bedroom. One of the intruders followed him, and after Henderson turned around, hit him in the head with the gun. The two began to wrestle, and a second intruder came into the room and pointed the second gun at Henderson while the first person backed out of the bedroom. The first intruder stumbled, and Henderson attempted to knock the gun out of his hand. The second intruder then opened fire, shooting Henderson once in the arm—after which the bullet penetrated the abdomen—and once in the leg. All three intruders then left the trailer with the drugs. Henderson went into the living room and looked outside but could not see in which direction the intruders went.

Stokes also testified at trial, stating Henderson was on the couch when he, Dukes, and Moore entered through the unlocked front door. Stokes testified he could see the marijuana on the kitchen island and that Moore was the one who shot Henderson. He further testified the entire group left with the marijuana.

2

>Robinson testified that as the group was driving back to Cedar Rapids, she, Dukes, and Cooper were speaking to each other and texting on their phones.
>
>Cooper testified Moore told the group Henderson was "talkin' a lot of crap" so Moore shot Henderson in the leg and arm, and Dukes claimed he hit Henderson in the head with his gun. However, during the struggle, Dukes dropped the gun.
>
>The group drove to the apartment of Moore's girlfriend, Bridget Johnson, where they divided up the marijuana. Johnson testified Moore told her he had robbed someone in the Cedar Rapids area and that during the robbery there was a struggle and he shot someone in the leg.
>
>The police were called to Henderson's home the same day. Two spent casings were found at the scene. While the gun that fired the bullets was not recovered, police found a pistol in a bedroom, though it had a bent magazine that would not allow it to fire. Marijuana residue was found throughout the trailer, and there was a trail of marijuana leading out the door.
>
>On September 13, 2011, the State filed a trial information charging Moore with robbery in the first degree, burglary in the first degree, willful injury causing serious injury while in the immediate possession and control of a dangerous weapon, and possession of marijuana with intent to deliver and/or conspiracy to possess marijuana with intent to deliver while in the immediate possession or control of a firearm. Trial began October 9, 2012. Robinson, Cooper, and Stokes testified as part of their plea agreements. On October 12, the jury returned guilty verdicts to the robbery, willful injury, and possession of marijuana counts, and an acquittal on the burglary count. Moore was sentenced on November 21, 2012, to twenty-five years on the robbery count, and five years on the possession and willful injury counts.

*State v. Moore*, 2014 WL 69593 at *1-3 (Iowa Ct. App. 2014) (unpublished). Moore filed a timely appeal, which was denied by the Iowa Court of Appeals, as was an application for further review by the Iowa Supreme Court. *Id*. Procedendo issued on March 12, 2014. *State v. Moore*, 01071 FECR 178332 (Black Hawk County 2014). Moore filed a timely post-conviction relief action on June 5, 2014, which was denied by

the district court, the Iowa Court of Appeals and the Iowa Supreme Court on an application for further review. *Moore v. State*, 01071 PCCV 124955 (Black Hawk County 2017); *Moore v. State*, 2017 WL 2461427 (Iowa Ct. App. 2017) (unpublished).[1] Procedendo issued on November 22, 2017. *Id.* Moore filed this petition three months later, on February 12, 2018. (docket no. 2). On August 3, 2018, the court directed respondent to file an answer. (docket no. 5). On October 3, 2018, respondent filed an answer (docket no. 7) and the court issued a briefing schedule (docket no. 9). On December 12, 2018, petitioner filed a motion to stay (docket no. 10). December 14, 2018, respondent filed a resistance to the motion to stay (docket no. 12). On December 31, 2018, petitioner filed his merits brief (docket no. 13). On February 4, 2019, respondent filed its merits brief (docket no. 17). On March 15, 2019, petitioner filed a motion requesting additional time to file a reply brief (docket no. 18).

### III. STANDARDS

*A. 28 U.S.C. § 2254 Standards*

28 U.S.C. § 2254 states that, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) prescribes the standards for this court to review a state prisoner's petition for habeas corpus relief. A federal court will not grant a petition for writ of habeas corpus "unless it appears that (1) the applicant has exhausted the remedies available in the courts of the State [the exhaustion doctrine], (2) there is an absence of available State

---

[1] The Iowa Court of Appeals remanded to the district court an issue related to attorney fee restitution, which is not at issue in this case. *Moore*, 2017 WL 2461427 at *14.

4

corrective process; or (3) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B). *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that under the AEDPA, a petitioner must exhaust available state remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in the state court. In other words, a state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Beorckel*, 526 U.S. at 845.

In Iowa, a prisoner must seek review through the "ordinary and established appellate review process" which includes an application for further review in the Iowa Supreme Court. *Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (internal citation omitted) (holding that an Iowa prisoner failed to exhaust his claims in the State court when prisoner's appeal of the state district court's decision to the Iowa Supreme Court was "deflected to the Iowa Court of Appeals" and the prisoner failed to file for further review in the Iowa Supreme Court).

Even when a prisoner's claim has been fully adjudicated in state court, a federal court still may not grant habeas relief unless the state court adjudication:

>(1)     Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme court; or
>
>(2)     Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of

the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curium*) (quotations and citations omitted). *See also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir. 2015) (holding that under the AEDPA, a federal court can grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.") (quotation and citation omitted).

## B. Strickland Standard

To demonstrate that his counsel was ineffective, petitioner must show "both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under the *Strickland* standard, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. Thus, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. For this court on habeas review, furthermore, petitioner must show that the State court's holding that petitioner failed to show his trial counsel was constitutionally ineffective was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See, e.g., Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (noting that on habeas review, federal courts take a "highly deferential" review a claim of ineffective assistance of counsel); *Knowles v. Mizayance*, 556 U.S. 111, 112 (2009) (holding that in the context of a § 2254 ineffective assistance of counsel claim, the question is not whether a federal court believes the state court's

6

determination under *Strickland* was correct, but whether that determination was unreasonable, a substantially higher threshold). To establish the "prejudice" prong, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).

## IV. DISCUSSION

### A. *Parties' Arguments*

Petitioner makes several claims. First, he challenges a charge given to the jury, by the trial judge, regarding deliberations. Second, petitioner argues trial counsel was ineffective for failing to challenge the fact that one of the state's trial witnesses was not listed as an accomplice in the jury instructions.[2] Third, petitioner alleges that trial counsel was ineffective for not objecting to alleged bolstering testimony. Finally, petitioner argues that his conviction should be set aside based on the cumulative nature of the errors.[3]

The respondent argues that each of petitioner's claims fail. First, regarding the judge's statement to the jury, the respondent states:

---

[2] Under Iowa law, a conviction cannot be sustained simply by accomplice testimony. Instead, there must be some type of "corroboration."

[3] In his original petition (docket no. 1), petitioner also asks a series of one-line questions, which he labels as Ground 3(a)-(j). For example, petitioner asks, "[w]as Dukes' Statement that he hit Henderson with his gun and lost it admissible as a statement of a co-conspirator." Several of those questions relate to the four issues outlined above. Those issues will be discussed more below. Petitioner does not refer to the others in his brief. Accordingly, he has waived those claims. *See, e.g., Harper v. Nix*, 867 F.2d 455, 457 (8th Cir. 1989) (holding that claims not briefed by a petitioner's counsel are deemed waived); *Walters v. Maschner*, 151 F. Supp. 2d 1068, 1075 (N.D. Iowa 2001). Regardless, to the extent the unbriefed questions from the petition amount to claims, they do not relate to any issue on which the state court ruled in a manner contrary to a clearly established federal law, or unreasonably applied a clearly established federal law. Accordingly, they also fail on their merits.

> Moore first asserts his right to a fair and impartial trial was denied when the court communicated with the jury after the jury foreperson indicated the jury was deadlocked. This claim is procedurally barred as a freestanding due process claim, was not fully exhausted within the vehicle of an ineffective-assistance-of-counsel claim, and does not violate federal law.

(docket no. 17 at 16). Similarly, regarding the witness issue, the respondent argues:

> Moore [states] his trial attorney was ineffective for failing to object to a jury instruction naming a fourth witness as an accomplice and requiring corroboration of her testimony under Iowa law. This claim also turns on an unreviewable state-law holding and was resolved on a reasonable application of Strickland.

(docket no. 17 at 25). Regarding the "bolstering" testimony, respondent states that:

> Moore argues his attorney failed to object to inadmissible "bolstering" testimony when a police officer vouched for another witness. This claim fails on state and federal law. . . Iowa's courts held the testimony was admissible under state law. . . A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." (internal quotations and marks omitted)). The alleged bolstering violation is thus not a valid ground for habeas relief.

(docket no. 17 at 28-30). Finally, the respondent states:

> the court should decline Moore's invitation to cumulate any prejudice from his asserted errors. "Errors that are not unconstitutional individually cannot be added together to create a constitutional violation." *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir.), *cert. denied*, 519 U.S. 968 (1996). In other words, "Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." *Id*. If the court holds none of the claims above prejudiced Moore it should not reconsider them on a theory of cumulative error.

(docket no. 17 at 32).

*B.  Analysis*

Each of petitioner's claims fail for the reasons stated in the respondent's brief. (docket no. 17).

### 1. Trial Court's Charge to the Jury

Petitioner alleges his constitutional rights were violated when the state district court "spoke with a hung jury off the record." Petitioner seems to raise this issue both independently and in the context of ineffective assistance of counsel. Respondent argues that later argument is procedurally defaulted, but, regardless, that petitioner's claim also fails on the merits. The court agrees that the claim fails on its merits, both as a direct constitutional challenge, and a claim of ineffective assistance of counsel. Accordingly, the court need not consider the issue of whether the claim was procedurally defaulted.

The Iowa Court of Appeals discussed the factually history underlying this claim:

> Moore claims the trial court erred in providing the jury with a supplemental verdict-urging instruction after the jury foreperson informed the district court the jury had come to a consensus on two of the charges but was deadlocked on the other two. Moore raised this issue on his direct appeal, but the record was not adequately developed to consider the issue. *See Moore*, 2014 WL 69593, at *5. He raised it again in his application for postconviction relief as an ineffective-assistance-of-counsel claim for his trial counsel's failure to object to the instruction and for his appellate counsel's failure to preserve error for appellate review. The district court heard testimony on this issue during the postconviction hearing, but no record of the trial court's instruction to the jury or the conversation the court had with the jury had been made or submitted to the district court during the postconviction relief hearing. The district court determined Moore's counsel was not ineffective, but noted it did so based on the testimony and not a formal record of the proceeding.
>
> After polling the jury to determine how many jurors believed "more deliberations would be beneficial"—eleven "yes," one "no"—the court instructed the jury:
>
>> Now, what—Under the law at this time what I'm going to instruct you to do is that you have a verdict on two counts. That's okay. But I'm going to send you back and ask you to deliberate some more on the other two counts. If you're unable to reach a verdict on those two counts, let us know and we'll have another—and we'll deal with it then. But I think we have to do—As you're aware, the parties have put in a lot

> of time and effort in this matter and we'd like to see a little more opportunity to try and reach a verdict. If you can't, you can't, on the last two counts. But we just need to know—I just need to know that you try it one more and we'll see where we're at. All righty?
>
> The jury returned to deliberations at 9:54 a.m. and deliberated until approximately 12:30 p.m. the same day (approximately two-and-one-half hours) before returning with a verdict.

*Moore*, 2017 WL 2461427 at *11. The Iowa Court of Appeals denied petitioner's claim, citing *State v. Piper*, 663 N.W.2d 894, 911 (Iowa 2003) (citation omitted), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010), for the proposition that under Iowa law, jury 'urging' instructions are permissible. The Iowa Court of Appeals also correctly noted that under federal precedent, the situation from petitioner's trial, where the trial court asked whether further deliberations would be useful, and then directed the jury to resume deliberations, is constitutional. The Supreme Court previously stated that:

> Here the inquiry as to the numerical division of the jury was not as to how they stood on the merits of the verdict, but how they stood on the question of whether further deliberations might assist them in returning a verdict. There is no reason why those who may have been in the minority on the merits would necessarily conclude that further deliberation would not be helpful, or that those in the majority would necessarily conclude otherwise. The two questions are clearly independent of one another. We believe the type of question asked by the trial court in this case is exactly what the Court in *Brasfield* implicitly approved when it stated: "[An inquiry as to numerical division] serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division."

*Lowenfield v. Phelps*, 484 U.S. 231, 240 (1988) (quoting *Brasfield v. United States*, 272 U.S. 448, 450 (1926)). The court agrees with both the respondent and the state court that there was nothing improper about the trial court polling the jury about whether

further deliberations would be helpful and directing the jurors to resume deliberating when eleven out of twelve jurors stated further deliberations would be helpful. Accordingly, to the extent petitioner alleges that the charge to the jury was contrary to, or involved an unreasonable application of federal law, that claim fails. Additionally, because there was no error, his counsel was not ineffective for failing to object to the trial court's charge. As noted by the Iowa Court of Appeals:

> Moore's trial counsel had no duty to object to a proper instruction and no prejudice resulted from his failure to do so. His trial counsel testified at the postconviction-relief hearing he also did not seek a mistrial because he believed the jury foreperson was favorable to Moore and her reluctance to reach an agreement on the charges could result in a hung jury. We will not second-guess this strategic decision. *See Lando*, 804 N.W.2d at 251 ("Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel.").

*Moore*, 2017 WL 2461427 at *12. Accordingly, petitioner's ineffective assistance of counsel claim related to the trial court's charge to the jury is denied because trial counsel had a valid strategic reason to not object. *See Bahtuoh v. Smith*, 855 F.3d 868, 873 (8th Cir.), *cert. denied sub nom. Bahtuoh v. Miles*, 138 S. Ct. 484, 199 L. Ed. 2d 368 (2017) (courts generally give deference to counsel's valid trial strategies).

### 2. Accomplice Witness Instruction

Petitioner next alleges that he was prejudiced because trial counsel failed to object to the fact that the trial court did not list Bridget Johnson as an accomplice in the jury instructions. This issue was considered by the Iowa State Court of Appeals, who stated:

> On direct appeal, Moore's appellate counsel argued trial counsel was ineffective for failing to challenge this instruction on the ground it failed to name Johnson as an accomplice. This court held "there was a great deal of corroborating evidence to support the testimony of Moore's co-conspirators." *Moore*, 2014 WL 69593, at *6. . .
>
> Our prior conclusion there was ample corroborating testimony is the law of the case and is "binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." *Grosvenor*, 402

11

>   N.W.2d at 405. This doctrine applies even in postconviction-relief matters. *See State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) (holding the law of the case doctrine barred the applicant's challenge to his conviction in postconviction-relief proceeding). Furthermore, there was testimony from a non-accomplice that Moore admitted to robbing someone in Cedar Rapids and shooting the victim in the leg.
>
>   Moore's trial counsel did not breach an essential duty in failing to challenge the instruction. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Counsel has no duty to raise an issue that has no merit.").

*Moore*, 2017 WL 2461427 at *7.

As noted by the respondent, petitioner's claim relies on an issue exclusive to Iowa law, which requires corroboration of accomplice testimony at trial. (The federal constitution does not require corroboration of accomplice testimony. *United States v. Rockelman*, 49 F.3d 418, 423 (8th Cir. 1995).) It is undisputed that the trial court listed three accomplice witness in the jury instructions, and proved the appropriate instruction regarding Iowa law, specifically that:

>   You are instructed that the Court has found that Lamario Stokes, Belinda Robinson, and Crystal Cooper were accomplices and you must consider each of them as an accomplice. The defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

*Moore*, 2017 WL 2461427 at *6. Thus, the only question before this court is whether trial counsel was ineffective for failing to object to Johnson not being listed as an accomplice.

As noted above, the *Strickland* standard is two pronged. It requires the petitioner to show both that trial counsel acted deficiently, and that deficiency resulted in prejudice. The prejudice prong requires a showing that the outcome would have been different had counsel acted appropriately. Even if the court assumes that counsel's performance was

deficient (which is not at all clear on the record), petitioner cannot show prejudice, because, even if Johnson had been listed as an accomplice, the state presented evidence that corroborated her testimony. As noted by the Iowa Court of Appeals:

> there was a great deal of corroborating evidence to support the testimony of Moore's co-conspirators. These include various cell phone records and video surveillance showing Robinson at Hy–Vee, which corroborates her testimony the group left a car in the Hy–Vee parking lot. There were also sales records from Wal-mart where a small digital scale was purchased, as well as the presence of a gun and marijuana residue in Henderson's residence. Furthermore, there was the testimony of the victim, Henderson, as to what occurred, including the gunshot wounds he suffered and the gash on his head from being struck with a gun, as well as the timing of the 911 call Henderson placed shortly before the group arrived at Johnson's residence with the marijuana. This is all sufficient evidence supporting the co-conspirators' testimony.

*Moore*, 2014 WL 69593 at *6. That is enough evidence to clear the low bar of corroboration.

That conclusion is supported by previous Eighth Circuit precedent. In a case also alleging that trial counsel was ineffective for failing to argue that an alleged accomplice witnesses' testimony was not corroborated, the Eighth Circuit Court of Appeals stated that when the record contained evidence that corroborated the alleged accomplice's testimony, trial counsel's failure to object did not result in prejudice. *See Martin v. Norris*, 82 F.3d 211, 216-17 (8th Cir. 1996). Because Johnson's testimony was corroborated by the evidence cited by the Iowa Court of Appeals, petitioner cannot establish that counsel's allegedly deficient performance resulted in prejudice. Accordingly, his claim related to the juror instruction is denied.

### 3. *Bolstering Testimony*

Next, his brief (docket no. 13), petitioner alleges that his trial counsel was ineffective for failing to object to "bolstering" testimony. Specifically, petitioner states that trial counsel should have objected when witness Mike Briggs, a police officer,

13

testified about witnesses Belinda Robinson and Crystal Cooper and stated that they gave identical statements. *Moore*, 2017 WL 2461427 at *9. In support of his argument, petitioner does not cite any constitutional right he believes was infringed, and only cites *United States v. Tulk*, 171 F.3d 596 (8th Cir. 1999).[4] In response, respondent again argues that petitioner's claim is both procedurally barred, because petitioner failed to exhaust it in the state courts, and fails on its merits. As with petitioner's claim related to the trial court's charge to the jury, because petitioner's claim clearly fails on the merits, the court need not consider the procedural issue.

Petitioner has not described any essential duty that counsel failed to perform by not objecting to the testimony from Briggs related to Robinson and Cooper. The Iowa Court of Appeals concluded that:

> counsel had no duty to object to the testimony. The officer testified as a fact witness based on his personal observations made during the course of his investigation and as a fact witness offering lay opinion based upon personal knowledge. . . "An officer's testimony regarding observed demeanor as a historical fact and lay opinion regarding the observed demeanor is relevant and admissible in Iowa." *State v. Ritenour*, No. 15-0038, 2016 WL 3269551, at *12 (Iowa Ct. App. June 15, 2016) (collecting cases). "Similarly, an officer can testify a person gave a statement or statements as a matter of historical fact and provide lay opinion on whether the statements were consistent or inconsistent or credible or not credible." *Id*. at *13. An officer can also testify regarding statements made and actions taken during the course of an investigation to explain the course of investigation. *See id*. Counsel had no duty to pursue a meritless issue.

*Moore*, 2017 WL 2461427 at *9. The Iowa Court of Appeals was correct that the testimony petitioner complains of was not prohibited by Iowa law or the Iowa Rules of Evidence. Nor is the testimony prohibited by the relevant federal precedent related to bolstering. *See Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011) (describing

---

[4] That case does not appear relevant to the argument petitioner is attempting to make, and merely mentions a claim related to bolstering in a single paragraph.

improper vouching); *see also United States v. Magee*, 19 F.3d 417, 421 (8th Cir. 1994) (describing examples of prohibited bolstering). Because trial counsel had no duty to object, petitioner has failed to allege that counsel acted deficiently. Additionally, as noted by the Iowa Court of Appeals, citing the *Strickland* standard, "even if defense counsel should have objected in regard to the emphasized testimony above the defendant was not prejudiced. The testimony was brief, and the officer qualified his answer by subsequently agreeing witnesses will have different perceptions. *Moore*, 2017 WL 2461427 at *9. Accordingly, petitioner's claim regarding bolstering is denied.

### 4. Cumulative Errors

Finally, in his brief, petitioner argues that his § 2254 petition should be granted based the cumulative effect of the alleged errors described in his petition (docket no. 1) and his brief (docket no. 16). As the Eighth Circuit Court of Appeals has repeatedly stated

> *Strickland* does not authorize a cumulative inquiry of counsel's performance. *Forrest v. Steele*, 764 F.3d 848, 860 (8th Cir. 2014) (citing *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996). "Errors that are not unconstitutional individually cannot be added together to create a constitutional violation." *Wainwright*, 80 F.3d at 1233 (internal citations omitted)).

*Shelton v. Mapes*, 821 F.3d 941, 950 (8th Cir. 2016). In this case, petitioner has failed to identify any errors, which, individually, amount to either deficient performance or that prejudiced his case. Accordingly, there is no basis upon which a court could determine that he is entitled to habeas relief and his cumulative effect claim is also denied.

### V. REMAINING MOTIONS

As noted above, petitioner filed two additional motions, one to stay this case (docket no. 10), and the second for an extension of time to file a reply (docket no. 18).

Whether to grant a stay to allow a § 2254 petitioner to exhaust previously unexhausted claims in state court is governed by the three-factor test set out in *Rhines v.*

*Weber*, 409 F.3d 982, 983 (8th Cir. 2005). The stay should be granted if there is: 1) good cause for failing to exhaust; 2) the claim could be meritorious; and 3) there is no indication that the request for a stay is being done to abuse or delay the process. *Id*. After considering those factors, the motion to stay should be denied.

Petitioner asks the court to stay these proceeding because he wants to exhaust a claim under *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018) that he is actually innocent and, relatedly, that post-conviction counsel was ineffective by failing to raise that issue, citing *Allison v. State*, 914 N.W.2d 866 (Iowa 2018). However, petitioner has not demonstrated or made any argument that his claim of actual innocence could be meritorious. Moreover, the one-year statute of limitations discussed in the court's prior initial review order (docket no. 5) is claim specific. Although petitioner's original claims were timely when the petition was filed on February 12, 2018, by the time petitioner mailed the motion to stay on December 8, 2018, the one-year statute limitation had expired. Accordingly, the claims petitioner wishes to exhaust in the state court are time barred in this court. For those reasons, the *Rhines*' factors weigh against petitioner and his motion to stay (docket no. 10) is denied.

Finally, petitioner asks for additional time to file a reply brief because the court failed to "fix 'a time'" to file a reply. (docket no. 18). However, on October 4, 2019, the court entered a briefing schedule stating that petitioner had until March 16, 2019, to file a reply brief. Accordingly, the court had already 'fixed' a time to file a reply brief. Accordingly, petitioner's motion for an extension of time to file a reply brief (docket no. 18) is denied.

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El*, 537 U.S. at 336-37; *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v.*

*Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having thoroughly reviewed the record in this case, the court finds that petitioner failed to make the requisite "substantial showing" with respect to the claims that he raised in his 28 U.S.C. § 2254 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, a certificate of appealability is denied. If petitioner desires further review of his 28 U.S.C. § 2254 petition, he may request the issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson,* 122 F.3d 518, 521 (8th Cir. 1997).

## VII. CONCLUSION

**IT IS THEREFORE ORDERED:**

(1) For the reasons set out above, the petition (docket no. 1) is **denied** and this case is dismissed.

(2) No certificate of appealability shall issue.

(3) The motion to stay (docket no. 10) is **denied**.

(4) The motion for extension of time to file a reply brief (docket no. 18) is **denied**.

**DATED** this 23rd day of September, 2019.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA